1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9    SHANNON LEWIS AVERY, SR.,                    CASE NO. 1:09-cv-00321-LJO-DLB PC

10                        Plaintiff,              FINDINGS AND RECOMMENDATIONS
                                                  RECOMMENDING DISMISSAL OF ACTION
11        v.                                      WITH PREJUDICE FOR FAILURE TO STATE
                                                  ANY CLAIMS UNDER § 1983
12   SUZAN L. HUBBARD,  et al.,
                                                  (Doc. 34)
13                        Defendants.
     _____/    OBJECTIONS, IF ANY, DUE IN 30 DAYS
14

15   **I.    Screening Order**

16        Plaintiff Shannon Lewis Avery, Sr. ("Plaintiff") is a state prisoner proceeding pro se and

17   in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed his

18   complaint on January 7, 2009, in the Northern District of California. (Doc. 1.)  Plaintiff's case

19   was transferred to the Eastern District of California on February 23, 2009.  (Doc. 6.)  On June 22,

20   2009, the Court issued an order dismissing Plaintiff's complaint for failure to state a claim upon

21   which relief may be granted, and granting Plaintiff leave to file an amended complaint within 30

22   days.  (Doc. 16.)  On September 1, 2009, the Court issued a Findings and Recommendations

23   recommending dismissal of the action for failure to state a claim and failure to file an amended

24   complaint.  (Doc. 17.)  On September 25, 2009, Plaintiff filed objections to the Findings and

25   Recommendations.  (Doc. 18.)  On October 21, 2009, the Court vacated the Findings and

26   Recommendations and ordered Plaintiff to file an amended within 30 days.  (Doc. 20.)

27        On June 1, 2010, the Court granted Plaintiff a fourth and final extension of time to file an

28   amended complaint.  (Doc. 33.)  On June 25, 2010, Plaintiff filed an amended complaint.  (Doc.

1

1  34.)  Plaintiff's amended complaint is presently before the Court for screening.

2          **A.      Screening Requirement**

3          The Court is required to screen complaints brought by prisoners seeking relief against a

4  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

5  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

6  legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

7  that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

8  § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been

9  paid, the court shall dismiss the case at any time if the court determines that . . . the action or

10  appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. §

11  1915(e)(2)(B)(ii).

12          "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

13  exceptions," none of which applies to § 1983 actions.  Swierkiewicz v. Sorema N. A., 534 U.S.

14  506, 512 (2002); Fed. R. Civ. P. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a short

15  and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ.

16  P. 8(a).  "Such a statement must simply give the defendant fair notice of what the plaintiff's

17  claim is and the grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512.  However, "the

18  liberal pleading standard . . . applies only to a plaintiff's factual allegations."  Neitze v. Williams,

19  490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not

20  supply essential elements of the claim that were not initially pled."  Bruns v. Nat'l Credit Union

21  Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268

22  (9th Cir. 1982)).

23          **B.      Summary of Plaintiff's Amended Complaint**

24          Plaintiff is currently a state prisoner at Avenal State Prison ("ASP") in Avenal,

25  California, where the acts he complains of occurred.  With the exception of 12 pages, Plaintiff's

26  96-page amended complaint is virtually identical to his original complaint.  Plaintiff again names

27  the following defendants: Suzan L. Hubbard, Director of the California Department of

28  Corrections and Rehabilitation ("CDCR"); James D. Hartley, Warden of ASP; M. Cruz,

1  mailroom sergeant at ASP; Lieutenant John Doe, supervisor of mailroom sergeant at ASP; J.

2  Montana-Hiller, mailroom sergeant at ASP; Schreiber, Warden's designee staff in the mailroom;

3  and R. Gonzales, correctional officer at ASP.

4          Plaintiff re-alleges the following:  On December 23, 2007, Plaintiff mailed ten

5  legal/confidential letters.  On December 24, 2007, Plaintiff received five of those letters back,

6  unsent.  Defendant R. Gonzales was the officer who processed Plaintiff's mail.  The letters were

7  returned for non-compliance with title 15 section 3141 of the California Code of Regulations.

8  (Doc. 34, pp. 4-5, ¶ 11-13.)

9          The letters to these five organizations were returned: Prison Book Project; Southern

10  Poverty Law Center; Human Rights Watch Prison Project; Books Through Bars; and Fortune

11  News.  (Doc. 34, pp. 13-14, ¶¶ 49-53.)  Plaintiff re-alleges that prison officials have interfered

12  with his constitutional rights to communicate with legal counsel and the media.  Plaintiff also re-

13  alleges other instances in which defendants interfered with Plaintiff receiving and sending mail.

14          The amended complaint adds the following allegations:  On September 8, 2008, Plaintiff

15  wrote a letter to the publisher of The Fresno Bee.  On November 9, 2008, Plaintiff wrote a letter

16  to the National Association for the Advancement of Colored People seeking attorney help.  These

17  legal/confidential letters were never mailed.  (Doc. 34, p. 66, ¶¶ 236, 239.)  Plaintiff also asserts

18  that his inmate appeals (grievances) are not being processed and/or logged.  (Doc. 34, pp. 63-64,

19  ¶¶ 223-29.)

20          Plaintiff claims interference with his right to access the courts, interference with his

21  personal mail and retaliation.  Plaintiff seeks money damages, declaratory relief, and injunctive

22  relief.

23      **C.    Plaintiff's Claims**

24          As with his original complaint, Plaintiff alleges several violations of the First

25  Amendment.

26          **1.    *Access to the Courts***

27  Plaintiff again asserts that his access to the courts was denied because his mail to legal

28

3

1  organizations was denied and his access to the law library was not meaningful.

2      Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey,

3  518 U.S. 343, 346 (1996). The right is limited to direct criminal appeals, habeas petitions, and

4  civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the

5  frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access

6  claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim).

7  Christopher v. Harbury, 536 U.S. 403, 412-15 (2002). For backward-looking claims, plaintiff

8  "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts

9  frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not

10  otherwise available in a future suit." Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007).

11      The first element requires that plaintiff show he suffered an "actual injury" by being shut

12  out of court. Christopher, 536 U.S. at 415; Lewis, 518 U.S. at 351; Phillips, 477 F.3d at 1076.

13  The second element requires that plaintiff show defendants proximately caused the alleged

14  violation of plaintiff's rights, "[t]he touchstone . . . [for which] is foreseeability." Phillips, 477

15  F.3d at 1077. Finally, the third element requires that plaintiff show he has no other remedy than

16  the relief available via *this* suit for denial of access to the courts. Id. at 1078-79.

17      Plaintiff's amended complaint contains no new allegations regarding his access to court.

18  As the Court previously found, Plaintiff fails to allege he has suffered an actual injury by being

19  shut out of court. Plaintiff alleges that prison staff at ASP have interfered with his ability to

20  litigate Case No. 1:07-CV-01175-OWW-WMW, *Avery v. Director of CDCR, et al.* However,

21  Plaintiff has not been shut out of court regarding that action because Plaintiff's allegations

22  indicate that the action is currently before the court. Plaintiff again fails to state a cognizable §

23  1983 claim for denial of access to the courts.

24          **2.    *Mail***

25      Plaintiff alleges that his First Amendment right has been unconstitutionally violated

26  regarding both his outgoing and incoming mail.

27

28

4

1               **A.     Incoming Mail**

2       As in his original complaint, Plaintiff alleges that his incoming mail from federal and

3 state agencies is opened and sent through non-privileged mail by defendants.  (Doc. 34, p. 16, ¶

4 61.)  Plaintiff also alleges that a picture frame and a picture sent by a friend were improperly

5 rejected by defendant Schreiber.  (Doc. 34, p. 19, ¶ 73.)  Prisoners have "a First Amendment

6 right to send and receive mail."  Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995).  Prison

7 regulations relating to the regulation of incoming mail are analyzed under the Turner

8 reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987).  Thornburgh v.

9 Abbott, 490 U.S. 401, 413-14 (1989).  The regulation is valid if it is reasonably related to

10 legitimate penological interests.  Turner, 482 U.S. at 89.  In determining the reasonableness of

11 the regulation, the court must consider the following factors: (1) whether there is a "valid,

12 rational connection between the prison regulation and the legitimate governmental interest put

13 forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the

14 impact that the "accommodation of the asserted constitutional right will have on guards and other

15 inmates," and (4) "the absence of ready alternatives."  Turner, 482 U.S. at 89-90.

16       As with his original complaint, Plaintiff has not sufficiently alleged that defendants

17 violated Turner with regards to Plaintiff's incoming mail from state and federal agencies.

18 Plaintiff alleges in his amended complaint that the mail is opened and sent through as non-

19 privileged mail.  (Doc. 34, p. 16, ¶ 61.)  However, mail from public officials or agencies does not

20 necessarily have to be treated as legal mail.  See Mann v. Adams, 846 F.2d 589, 590-91 (9th Cir.

21 1988) (per curiam) (finding that mail from public agencies, public officials, civil rights groups,

22 and news media may be opened outside the prisoner's presence in light of security concerns).

23 Plaintiff thus fails to state a cognizable First Amendment claim regarding his incoming mail.

24       Plaintiff also alleges that defendant Schreiber interfered with Plaintiff's mail when

25 Schreiber refused to give Plaintiff a picture frame sent from a female friend.  (Doc. 34, p. 80, ¶

26 260.)  Plaintiff does not sufficiently allege a cognizable First Amendment claim.  Plaintiff has not

27 sufficiently alleged that Schreiber violated Turner regarding his treatment of the picture frame.

28

1              **B.      Outgoing Mail**

2          As stated, prisoners have a "First Amendment right to send and receive mail." Witherow,

3    52 F.3d at 265.  Censorship of outgoing prisoner mail is justified if the following criteria are met:

4    (1) the regulation furthers "an important or substantial government interest unrelated to the

5    suppression of expression" and (2) "the limitation on First Amendment freedoms must be no

6    greater than is necessary or essential to the protection of the particular governmental interest

7    involved." Procunier v. Martinez, 416 U.S. 396, 413 (1974) (*limited by* Thornburgh, 490 U.S. at

8    413-14, only as test relates to incoming mail).

9          Plaintiff alleges that defendants interfered with his First Amendment rights by failing to

10   mail Plaintiff's letters to the  Prison Book Project, Southern Poverty Law Center, Human Rights

11   Watch Prison Project, Books Through Bars, Fortune News, and the National Association for the

12   Advancement of Colored People.  Plaintiff alleges that there is no justification for prison officials

13   to deny sending these letters as confidential.

14         It does not appear that Plaintiff's letters to any of these organizations would qualify as

15   legal mail.  Plaintiff does not allege he was communicating with his lawyer, but was rather

16   soliciting legal assistance.  (Doc. 34, p. 14, ¶ 54.)  This is not sufficient to make such

17   correspondence legal mail for purposes of the First Amendment.  See Keenan v. Hall, 83 F.3d

18   1083, 1094 (9th Cir. 1986), *as amended by* 135 F.3d 1318 (9th Cir. 1998) (finding mail from the

19   courts, as opposed to mail from a prisoner's lawyer, is not legal mail).  Plaintiff has not alleged

20   that he cannot send this mail as non-confidential mail.  Plaintiff again has not stated a cognizable

21   First Amendment claim against defendants because it does not appear that Plaintiff was actually

22   prohibited from exercising his First Amendment rights.

23         Plaintiff also alleges that prison mail staff interfered with his correspondence with the

24   news media.  It appears that Plaintiff complains of the prison mail staff not sending out his mail

25   to Fortune News, which is a newsletter specifically for prisoners, or The Fresno Bee.  (Doc. 34,

26   pp. 12, 14, 66  ¶¶ 45, 53, 239.)  As stated previously, however, Plaintiff has not stated a

27   cognizable First Amendment claim because it does not appear from Plaintiff's complaint that

28   Plaintiff was actually prohibited from exercising his First Amendment rights.  Plaintiff's attempts

1  to mail letters to the media appear to have been possible via non-confidential mail.  There is no
2  special deference for media-related mail.  See Mann, 846 F.2d at 591.

3         Plaintiff also alleges three other instances in which ASP mail staff failed to mail
4  Plaintiff's letters via confidential mail.  Plaintiff alleges that one such instance occurred on May
5  12, 2008, when Plaintiff attempted to send letters as legal confidential mail to Erica C. Jones,
6  DBTAC-Pacific Americans with Disabilities center, the Department of Veteran Affairs, Carol A
7  Sobel, attorney at law, and Fortune Society. (Doc. 34, pp. 45-46, ¶156.). Plaintiff has not
8  sufficiently alleged how defendants have violated Procunier.  Plaintiff has not sufficiently stated
9  a cognizable First Amendment claim.

10        Plaintiff again alleges another instance in which he attempted to mail letters as
11 confidential mail to Bar Association of San Francisco Lawyers Referral Service, Sonoma County
12 Legal Services Foundation, Legal Panel of the San Francisco Bay Area, Project Sentinel Referral
13 Service, and Bay Area Police Watch.  (Doc. 34, pp. 46-48, ¶¶ 169-71.)  Again, Plaintiff has not
14 sufficiently alleged how defendants have violated Procunier.

15        Plaintiff re-alleges a third instance of mail interference.  On September 23, 2008, Plaintiff
16 attempted to mail a letter as confidential mail to Lawyer Referral Services of the San Mateo
17 County Bar Association, but the letter was sent back as not meeting the criteria for
18 legal/confidential mail.  (Doc. 34, p. 46, ¶ 159.)  Again, Plaintiff has not sufficiently alleged how
19 defendants have violated Procunier.

20        Plaintiff thus fails to state a cognizable First Amendment claim against defendants R.
21 Gonzales, M. Cruz, J. Montana-Hiller, Schreiber, and Lieutenant John Doe.

22             **3.    *Retaliation***

23        Plaintiff alleges retaliation by defendants for filing grievances and civil complaints.
24 (Doc. 34, pp. 21, 23, ¶¶ 82, 88.)  Allegations of retaliation against a prisoner's First Amendment
25 rights to speech or to petition the government may support a § 1983 claim.  Rizzo v. Dawson,
26 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir.
27 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable
28 claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state

1  actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

2  conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and

3  (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson,

4  408 F.3d 559, 567-68 (9th Cir. 2005).

5       In his amended complaint, Plaintiff does not sufficiently allege an adverse action against

6  him by the defendants.  Instead, Plaintiff merely asserts the legal elements without any

7  supporting factual allegations.  (Doc. 34, pp. 73-76, ¶¶ 251-54.)  Plaintiff thus fails to state a

8  cognizable retaliation claim.

9            **4.**    ***Supervisory Liability***

10      Plaintiff again alleges that defendant Suzan Hubbard as Director of CDCR is responsible

11  for the actions of ASP staff. (Doc. 34, p. 77, ¶ 256.)  Plaintiff alleges that James Hartley as the

12  Warden of ASP failed to respond to Plaintiff's numerous complaints and as warden had the

13  power to remedy any alleged violations.  (Id. at ¶ 257.)  Plaintiff appears to be alleging liability

14  based solely on their supervisory role.  Supervisory personnel are generally not liable under §

15  1983 for the actions of their employees under a theory of respondeat superior and, therefore,

16  when a named defendant holds a supervisorial position, the causal link between him and the

17  claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858,

18  862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442

19  U.S. 941 (1979).  To state a claim for relief under § 1983 based on a theory of supervisory

20  liability, plaintiff must allege some facts that would support a claim that supervisory defendants

21  either: personally participated in the alleged deprivation of constitutional rights; knew of the

22  violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so

23  deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force

24  of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal

25  citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although federal

26  pleading standards are broad, some facts must be alleged to support claims under § 1983.  See

27  Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

28      In his amended complaint, Plaintiff again fails to allege any facts indicating that

1  defendants Hubbard and Hartley personally participated in the alleged deprivation of

2  constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or

3  "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional

4  rights' and is 'the moving force of the constitutional violation.'"  Hansen, 885 F.2d at 646.

5  Plaintiff thus fails to state a cognizable § 1983 claim against defendants Hubbard and Hartley.

### 5.   *Grievance Procedure*

7       In his amended complaint, Plaintiff appears to make allegations concerning his access to

8  the grievance procedure and the response, or lack thereof, by prison officials.  (Doc. 34, pp. 63,

9  70-72, ¶¶ 223-25, 240.)  "[A prison] grievance procedure is a procedural right only, it does not

10 confer any substantive right upon the inmates."  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.

11 1993) (citing Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v.

12 Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no

13 entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir.

14 2001) (existence of grievance procedure confers no liberty interest on prisoner).  "Hence, it does

15 not give rise to a protected liberty interest requiring the procedural protections envisioned by the

16 fourteenth amendment."  Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F.Supp. 315, 316

17 (E.D. Mo. 1986).  Actions in reviewing prisoner's administrative appeal cannot serve as the basis

18 for liability under a section 1983 action.  Buckley, 997 F.2d at 495.  Thus, Plaintiff cannot state a

19 cognizable claim regarding the appeal process.

### 6.   *Other Claims*

21      Plaintiff alleges violations of the Eighth Amendment, the Due Process Clause and Equal

22 Protection Clause of the Fourteenth Amendment, and Privileges and Immunities Clause of

23 Article IV of the United States Constitution.  (Doc. 34, p. 1.)

24      To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

25 conditions must involve "the wanton and unnecessary infliction of pain . . . ."  Rhodes v.

26 Chapman, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh,

27 prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and

28 personal safety.  Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v.

1   Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  Here, Plaintiff's allegations regarding his mail do not

2   rise to the level of a violation of the Eighth Amendment.

3         The Due Process Clause of the Fourteenth Amendment protects prisoners from being

4   deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S.

5   539, 556 (1974).  "Where a particular amendment provides an explicit textual source of

6   constitutional protection against a particular sort of government behavior, that Amendment, not

7   the more generalized notion of substantive due process, must be the guide for analyzing a

8   plaintiff's claims."  Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal

9   quotations, and brackets omitted), cert. denied, 117 S. Ct. 1845 (1997); see  County of

10  Sacramento v. Lewis, 523 U.S. 833, 842 (1998).  Plaintiff's claims are properly analyzed under

11  the First Amendment, and not the Due Process Clause of the Fourteenth Amendment.

12        The Equal Protection Clause requires that persons who are similarly situated be treated

13  alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  Plaintiff's

14  allegations are not sufficient to state a cognizable Equal Protection Clause.

15        "[T]he Privileges and Immunities Clause 'reliev[es] state citizens of the disabilities of

16  alienage in other States . . . .'"  Ponderosa Dairy v. Lyons, 259 F.3d 1148, 1156 (9th Cir. 2001)

17  (quoting  Paul v. Virginia, 75 U.S. 168, 180 (1869)).  "Discrimination on the basis of out-of-state

18  residency is a necessary element for a claim under the Privileges and Immunities Clause."

19  Giannini v. Real, 911 F.2d 354, 357 (9th Cir. 1990).  Plaintiff alleges no issues regarding out-of-

20  state residency, and thus the Privileges and Immunities Clause has no relevance here.

21  **II.    Conclusion and Recommendations**

22        The court finds that plaintiff's complaint fails to state any claims upon which relief can be

23  granted under section 1983 against any of the defendants.  Under Rule 15(a) of the Federal Rules

24  of Civil Procedure, the court should "freely give leave [to amend] when justice so requires.'"  In

25  addition, "[l]eave to amend should be granted if it appears at all possible that the plaintiff can

26  correct the defect."  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations

27  omitted).  However, in this action plaintiff has been granted an opportunity to amend the

28  complaint with guidance by the court.  However, Plaintiff merely re-filed his original complaint

1 with the addition of boilerplate elements.  Plaintiff was given numerous extensions of time, but

2 has failed to allege facts against any of the defendants which state a claim under § 1983.  The

3 court finds that the deficiencies outlined above are not capable of being cured by amendment,

4 and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).

5       Accordingly, based on the foregoing, the court HEREBY RECOMMENDS that this

6 action be dismissed in its entirety, with prejudice, for failure to state a claim upon which relief

7 can be granted.

8       These Findings and Recommendations will be submitted to the United States District

9 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

10 thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file

11 written objections with the Court.  The document should be captioned "Objections to Magistrate

12 Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections

13 within the specified time may waive the right to appeal the District Court's order.  Martinez v.

14 Ylst, 951 F.2d 1153 (9th Cir. 1991).

15

16       IT IS SO ORDERED.

17    Dated:   __March 2, 2011__          _____/s/ **Dennis L. Beck**_____

18                                        UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28